Dan H. Cooper, Bar No. 004900
Law Office of Dan Cooper
177 N. Church Avenue, Suite 601
Tucson, AZ 85701
(520) 367-5442
dan@cooperlaw.me

Amy Krauss, Bar No: 013916
P.O. Box 65126
Tucson, AZ 85728
(520)400-6170
abkrauss@comcast.net

Attorneys for Abdi Yemani Hussein

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | ) CR-19-02162- JGZ-EJM-2 |
| Plaintiff, | ) |
| vs. | ) **NOTICE OF INTENT TO INTRODUCE** |
| | ) **EXPERT WITNESS TESTIMONY:** |
| Abdi Yemani Hussein, | ) |
| | ) **PETER A. CHALK, PH.D.** |
| Defendant. | ) |

Pursuant to Rule 16(b)(1)(C) of the Federal Rules of Criminal Procedure and Rules 702, 703, and 705 of the Federal Rules of Evidence, Abdi Hussein provides notice of his intent to introduce expert evidence, described below, in its case-in-chief and/or in rebuttal at trial.[1]

---

[1] Pursuant to Fed. R. Crim. P. 16(b)(1)(C)(iii), Dr. Chalk's qualifications and list of publications he has authored in the previous 10 years are listed on the CV provided to all counsel of record under separate cover. A list of all other cases in which Dr. Chalk has testified as an expert at trial or by deposition during the previous 4 years was also

1

**Dr. Peter A. Chalk**
**Subject Matter Expert**
**Transnational Security Institute for Security Governance**
**Monterey, CA**

Dr. Chalk is an expert in the origins and operational dynamics of networked terrorist and organized crime groups, with more than 20 years of experience tracking the evolving threat of transnational security. Dr. Chalk has studied terrorist organizations, their recruiting methods and the manner in which they attempt to attract new members. He also has studied the ways in which targeted youth become radicalized.

Mr. Hussein intends to elicit the following opinions from Dr. Chalk based on his research, scholarship, and experience as described in his CV:

1. <u>The Internet and Radicalization</u>.

Dr. Chalk will testify that terrorist groups and violent extremist organizations ("VEOs") commonly use the internet to target youth. He will explain that the Islamic State of Iraq and Syria ("ISIS"), in particular, tends to exploit social media platforms and websites as a means of disseminating their message. Dr. Chalk will testify about the reasons the internet is an effective genre for increasing opportunities for indoctrination, for amplifying extremist messaging, for promoting a sense of cohesion and unity, for building confidence through covert messaging, for sharing information and for enhancing the prospect for self-radicalization.

---

transmitted to counsel. This disclosure may be supplemented if additional information becomes known to undersigned counsel.

2. <u>ISIS Use of the Internet to Inspire and Actualize Terror</u>.

Dr. Chalk will testify that ISIS has an extensive presence on open interface platforms such as Twitter (Now X), Facebook, YouTube, and also uses Telegram as its perform medium for covert messaging. Until 2014, ISIS designed most of its missives to encourage Islamists from around the world to undertake a *hijrah* (literally a call to migration) and physically coalesce with the group in its quest to build an Islamic State in Iraq and the Levant. The group's ideological propaganda shifted, however, when a U.S.-led coalition began to step up airstrikes against ISIS from late 2014 onward. ISIS's emphasis on homegrown attacks increased as the group started to lose physical territory. Since at least 2016, the group has increasingly focused on encouraging and inspiring individually orchestrated acts of violence that it then claimed or highlighted in its own propaganda. Dr. Chalk will testify that by 2019 ISIS had control of little territory and its focus on "lone wolf" terror was in part brought about by that lack of control. By 2019 ISIS was not encouraging *hijrah*.

Dr. Chalk will testify that in its current drive to motivate lone actor terrorism at home, ISIS has placed a premium on urging young *jihadis* to undertake small-scale opportunist assaults using crude tactics. The point is to motivate rudimentary, cheap, and easily executed solo attacks, which are expedient methods of exporting militant violence abroad.

3. <u>ISIS Radicalization and Abdi Yemini Hussein</u>.

Dr. Chalk will testify that Hussein's personal behavior in no manner reflects a person who has undergone a major militant Salafi transformation. According to statements

3

from his mother (Saada Kalif), father (Yemani Hussein Ali), and Ahmed Ismail (a friend of Mohamed's brother), Hussein did not pray regularly, did not attend Mosque, drank alcohol, smoked marijuana, regularly played video games, did not exhibit religious (or political) convictions, and did not espouse theological arguments justifying the use of violence against kuffar (infidels, nonbelievers). In addition, there is an absence of evidence that Hussein frequented *jihadi* online chat rooms on the dark web. This is one of the main vectors by which true supporters of ISIS actualize their commitment to join the movement.

Dr. Chalk will testify about Hussein's expressed willingness to travel overseas and join ISIS. He will explain that this does not, in itself, mean Hussein had morphed into a truly indoctrinated *jihadi* fighter. Dr. Chalk will describe numerous screenshots of texts between the FBI Undercover Employee (UCE) and Ahmed Mohamed which highlight Mohamed's growing frustration over Hussein's repeated prevarication in finalizing the paperwork required for making the journey to Egypt. Mohamed also expressed considerable uncertainty as to whether his would-be associate ever intended to undertake a *hijrah*, something that Mohamed directly raised in a face-to-face meeting with the UCE on April 22, 2019, as well as in an extended undated online messaging stream with the same person. An example of Hussein's lack of fervor, of course, was his reaction at the airport when told by the ticket agent he did not have the proper paperwork to board the flight. He did not argue or even question her decision. He simply turned and began to walk away. Dr. Chalk will testify that it is also notable that upon arrest, Hussein stated that he would readily cooperate with U.S. law enforcement and provide any information he could. Acquiescence of this sort is broadly consistent with his mother's statement that he felt no

anger against the United States and is certainly not reflective of a hardened Salafist imbued with a bitter and enduring hatred of America and all that it stands for. It is also inconsistent with a radicalized follower of ISIS preparing to make *hijrah*.

Just as importantly, Dr. Chalk will testify, had Hussein really been a staunch advocate of ISIS, why did he not heed the group's repeated call for supporters to stop going overseas and, instead, carry out attacks at home? While conversations between the UCE and two defendants did raise the possibility of terror strikes in the United States, such references were fleeting, generally made at the behest of Mohamed, and were always subordinate to the priority of operating abroad. The mere fact that Hussein readily elected to fly to Egypt rather than remain in America suggests that he had not read the plethora of statements put out by ISIS from 2014 onwards stressing the utility of, and preference for, lone-wolf terror strikes in the West. Dr. Chalk will explain that the group's leadership sent out such a message as recently as April 2022, when its spokesperson, Abu Omar al-Muhajir, urged ISIS fighters to follow the example of past solo actors, asserting they "filled [the United States and Europe] with terror," and adding that such operations were "plenty and the opportunity is available before you now." Overall, Abdi Hussein demonstrated little knowledge of ISIS or its goals.

Finally, Dr. Chalk will testify that anyone who had truly committed to joining ISIS would know that the type of rapid induction processes the UCE described would not happen in reality. Gaining direct access to a camp in Sinai would require far more than simply going to a pre-designated mosque in Cairo, meeting a fellow Salafi "brother," and exchanging a secret password. At the very least, ISIS would subject a would-be-recruit to

5

an intensive interrogational audit to validate his/her personal background and attest to their grasp of ISIS ideology and *jihadi* precepts. This would be true even if the individual had an endorsement of credibility from someone who claimed to know a member of the group, which the UCE presumably said he did. Hussein did not have a comprehensive grasp of ISIS theological dogma beyond articulating rare, vague statements of wanting to kill *kuffars*.

In short, Dr. Chalk will testify that Hussein was the very antithesis of the type of dedicated Islamist who would knowingly risk going abroad to join ISIS confident in the belief that he/she had the necessary skills, knowledge, and commitment to ultimately join the movement.

***

DISCLOSURE APPROVED BY:

_____
Peter A. Chalk, Ph.D.

RESPECTFULLY SUBMITTED this 20th day of February, 2024.

By  s/ *Dan H. Cooper*
Dan H. Cooper

By: s/ *Amy B. Krauss*
Amy Krauss

6

**CERTIFICATE OF SERVICE**

This document was electronically transmitted to the Clerk's Office using the CM/ECF System for filing, which provided service to all registered case participants.