**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-19-02162-TUC-JGZ (EJM) |
| Plaintiff, | **ORDER re Severance** |
| v. | |
| Ahmed Mahad Mohamed, et al., | |
| Defendants. | |

Pending before the Court is Defendant Abdi Hussein's Motion to Sever Defendants. (Doc. 201.) Defendant Mohamed filed a Notice Of Joinder Of Defendant Hussein's Motion To Sever Defendants. (Doc. 205.) After the Motion was fully briefed, (Doc. 219, 235), Defendant Hussein filed a Supplemental Memorandum (Doc. 389), and the Government filed a response (Doc. 443). For the following reasons, the Court will deny the Motion.

## BACKGROUND

Defendants Mohamed and Hussein are charged by Superseding Indictment with Conspiracy to Provide Material Support and Resources to a Designated Foreign Terrorist Organization (Count 1) and Attempting to Provide Material Support and Resources to a Designated Foreign Terrorist Organization (Count 2), both in violation of Title 18 U.S.C. § 2339B.[1] (Doc. 120.) The Defendants were arrested on July 26, 2019. (Doc. 3-1 at 14.) The criminal complaint alleges that the Defendants were self-professed ISIS supporters

---

[1] Counts 3 and 4 of the Superseding Indictment were dismissed without prejudice. (Doc. 318.)

who conspired to travel overseas to join the foreign terrorist organization. (*Id.* at 2.)

According to the complaint, in August 2018, Mohamed initiated contact with an FBI Online Covert Employee ("OCE") through a social media platform and expressed his desire to make "hijrah"[2] to Syria or Iraq to join ISIS and achieve martyrdom. (*Id.* at 5.) In December of 2018, Mohamed was introduced to an FBI Undercover Employee ("UCE"). From December 2018 until his arrest on July 26, 2019, Mohamed had numerous conversations with the UCE using approximately four different encrypted social media platforms. (*See id.*) During these online conversations, Mohamed discussed his desire to travel to the Middle East to join ISIS and sent ISIS propaganda videos as well as related news articles to the undercover officer. (*See id.*) Mohamed also met with the UCE in-person on five different occasions: February 1, 2019; March 12, 2019; April 22, 2019; June 24, 2019; and July 26, 2019 (the day of arrest). (*See id.*) Hussein was present for three of the five in-person meetings: March 12, 2019; June 24, 2019; and July 26, 2019. (*See id.*) During the in-person conversations, Mohamed and Hussein discussed a variety of different topics with the UCE including their motivation and desire to travel to the Middle East to make hijrah, their plans to obtain immigrant travel documents, and their travel itinerary and cover story. (*See id.*) After obtaining the necessary travel documents, the Defendants purchased airline tickets for a flight scheduled to depart on July 26, 2019, from Tucson International Airport to Cairo, Egypt. (*Id.* at 14.) That day, the Defendants checked in for their flight, passed through airport security, and were waiting to board their flight when they were arrested by the FBI. (*Id.*)

After their arrest, Mohamed was interviewed by FBI Special Agents Edwards and Mutari. (Doc. 219 at 7.) During the interview, Mohamed gave a statement in which he admitted to acquiring travel documents under false pretenses with the goal of traveling to Syria to join ISIS. (*Id.*) Hussein invoked his *Miranda* rights and was not questioned. (*Id.*)

//

//

---

[2] Hijra(h) is an Arabic phrase referring to a foreign fighter's journey from his/her country of origin to join and fight in terrorist held territories. (Doc. 3-1 at 5.)

- 2 -

**LEGAL STANDARD**

Rule 8(b) of the Federal Rules of Criminal Procedure provides that defendants who participated "in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses" may be charged together. Under Rule 14(a), a court may grant severance or provide any other relief that justice requires if consolidation for trial would prejudice a defendant. Fed. R. Crim. P. 14. Rules 8(b) and 14 are designed "to promote economy and efficiency and to avoid a multiplicity of trials, [so long as] these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial." *Bruton v. United States*, 391 U.S. 123, 131 n.6 (1968) (internal quotation marks omitted).

The Ninth Circuit has emphasized that "a joint trial is particularly appropriate where the co-defendants are charged with conspiracy, because the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the same evidence would be admissible against each of them in separate trials." *United States v. Fernandez*, 388 F.3d 1199, 1242 (9th Cir. 2004) (citations omitted). It is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials. *Zafiro v. United States*, 506 U.S. 534, 540 (1993). Rather, a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence. *Id.* at 539. Further, Rule 14 "does not require severance even if prejudice is shown," instead, it "leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Id.* A party seeking severance carries the "difficult burden" of "demonstrating clear, manifest or undue prejudice resulting from a joint trial." *United States v. Jenkins*, 785 F.3d 1387, 1394 (9th Cir. 1986).

Defendants do not assert that joinder was improper in the Superseding Indictment under Rule 8(b), but rather that their joint trial should be severed under Rule 14(a). Hussein argues that the Defendants' trials should be severed because: (1) the Court's admission of Mohamed's pre-arrest and post-arrest statements would violate the *Bruton* rule; and (2) the

disparity in the volume of evidence against each Defendant would allow the Government to "bolster a weak case against Hussein with overwhelming evidence against Mohamed." (Doc. 201.) In his Supplemental Memorandum, Hussein additionally argues that Mohamed's favorable statements about Hussein must be heard by the jury to ensure Hussein receives a fair trial. (Doc. 389.) In his Notice of Joinder, Mohamed argues the Court should grant the Motion to Sever because Defendants' mutually antagonistic defenses would preclude a jury from acquitting both Defendants. (Doc. 205.)

## DISCUSSION

### A.     Application of *Bruton*

#### a. *Mohamed's Post-Arrest Statements*

The Court concludes it is unnecessary to sever Defendants' trial based on Mohamed's post-arrest statements because any prejudice that would result from admitting Mohamed's confession can be cured by redacting the confession and by providing a limiting instruction to the jury.

Under the Confrontation Clause of the Sixth Amendment, a defendant has the right to cross-examine witnesses against him. U.S. CONST. amend. VI. When a witness is unavailable to testify, his out-of-court testimony is inadmissible unless the defendant had a prior opportunity to cross-examination the witness. *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004). Statements taken by police officers during interrogation are considered "testimony" and subject to the Confrontation Clause. *Davis v. Washington*, 547 U.S. 813, 822 (2006). In a multiple-defendant trial, admitting a non-testifying defendant's confession that implicates a codefendant violates the Confrontation Clause even if the court instructs the jury to use the confession only against the defendant who made it. *Bruton*, 391 U.S. at 124. However, the admission of a non-testifying codefendant's confession does not violate the Confrontation Clause if: (1) a proper limiting instruction is given; and (2) the confession in redacted to eliminate not only the defendant's name but also any reference to their existence. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987).

Here, *Bruton* problems can be resolved by redacting Mohamed's confession to remove references to Hussein, both direct and indirect, and by providing the jury with a

limiting instruction. *See Richardson,* 481 U.S. at 211. The Court has carefully reviewed the Government's redacted transcript of Mohamed's confession (Doc. 221) and is satisfied that it makes no reference to Hussein either explicitly or implicitly.[3] Rather, the confession focuses on Mohamed's own actions and, to the extent that other individuals are referenced, it is clear that Mohamed is referring to either the undercover officer or other individuals whom he met online. (*See id.*) There is no reference to Hussein's existence within Mohamed's redacted confession. (*See id.*) Moreover, a limiting instruction provided by the Court will direct the jury to consider Mohamed's confession as evidence only with respect to Mohamed.

### b. Mohamed's Pre-Arrest Statements

The *Bruton* rule applies to testimonial statements only and does not mandate severance when the prosecution seeks to introduce nontestimonial statements by a coconspirator that would otherwise be admissible under Rule 801(d)(2)(e), Fed. R. Evid. Thus, to the extent that Hussein is arguing that admission of Mohamed's *pre-arrest* statements would violate *Bruton,* the Court disagrees.

Only "testimonial" codefendant statements are subject to the federal Confrontation Clause limits established in *Bruton*. *Lucero v. Holland*, 902 F.3d 979, 988 (9th Cir. 2018). Unlike a confession elicited during a police interrogation, statements made by a coconspirator during or in furtherance of the conspiracy are not considered "testimonial."[4] *See United States v. Allen*, 425 F.3d 1231, 1235 (9th Cir. 2005) (holding a statement made in furtherance of the conspiracy was not testimonial, and its introduction did not violate the Confrontation Clause); *see also Crawford*, 541 U.S. at 56 (describing "statements in furtherance of a conspiracy" as "statements that by their nature [are] not testimonial."); *Davis*, 547 U.S. at 813 (statements made unwittingly to a Government informant were clearly nontestimonial). Indeed, coconspirator statements are not considered testimonial

---

[3] Neither Defendant challenges the Government's proposed redactions.

[4] "Testimonial evidence," for Confrontation Clause purposes, includes, at minimum, prior testimony at a preliminary hearing, before a grand jury, or at former trial, and statements made during police interrogations. *Crawford v. Washington*, 541 U.S. 36, 52 (2004).

hearsay and are independently admissible under the Federal Rules of Evidence. *See* Fed. R. Evid. 801(d)(2)(E) ("A statement is not hearsay if . . . [it is] a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."). Coconspirator statements are admissible at trial if the offering party proves by a preponderance of the evidence that: (1) a conspiracy existed which involved the declarant and the non-offering party; (2) the statement was made during the course of the conspiracy; and (3) the statement was made in furtherance of the conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).[5]

### B. Prejudicial Spillover

Hussein argues that severance is necessary due to "prejudicial spillover." (Doc. 201 at 6-7.) Hussein asserts that because Mohamed made multiple incriminating statements months before Hussein became involved in the alleged conspiracy, the jury will not be able to compartmentalize the evidence against each Defendant and, as a result, the Government will bolster a comparatively weaker case against Hussein with overwhelming evidence against Mohamed. (*Id.* at 6.) This argument is unpersuasive.

"A claim of prejudicial spillover cannot succeed unless 'a defendant . . . prove[s] prejudice so pervasive that a miscarriage of justice looms.'" *United States v. Lazarenko*, 564 F.3d 1026, 1043 (9th Cir. 2009) (quoting *United States v. Levy-Cordero*, 67 F.3d 1002, 1008 (1st Cir. 1995)). While a great disparity in the amount of evidence introduced against joined defendants may be grounds for severance, a defendant is not entitled to a severance merely because the evidence against a codefendant is more damaging than the evidence against him. *United States v. Monks*, 774 F.2d 945, 949 (9th Cir. 1985) (citing *United States v. Gaines*, 563 F.2d 1352, 1355 (9th Cir. 1977)). "In assessing the prejudice to a defendant from the 'spillover' of incriminating evidence, the primary consideration is whether 'the

---

[5] The admissibility of Mohamed's pre-arrest statements to the undercover officer cannot be resolved as part of the motion to sever because the admissibility of such statements will depend upon the Government's proof as analyzed under Rule 801(d)(2)(E). The Court, however, notes that if the Government meets its Rule 801(d)(2)(E) burden, "statements made by coconspirators prior to the entry of a defendant in a conspiracy may be used against a defendant who subsequently joins the conspiracy." *United States v. Brown*, 943 F.2d 1246, 1255 (9th Cir. 1991).

jury can reasonably be expected to compartmentalize the evidence as it relates to separate defendants, in view of its volume and the limited admissibility of some of the evidence.'" *United States v. Cuozzo*, 962 F.2d 945, 950 (9th Cir. 1992) (quoting *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980)).

Hussein has not shown prejudice so pervasive that a miscarriage of justice looms. Mohamed's pre-arrest statements are admissible regardless of whether the trials are severed to the extent permitted by Rule 801(d)(2)(E). In the event that the government presents incriminating evidence pertaining only to Mohamed, such as Mohamed's post-arrest confession, the jury will be given a limiting instruction so they can compartmentalize the evidence. In addition, they will be instructed to consider the charges against each Defendant separately. "[J]uries are presumed to follow their instructions." *Zafiro*, 506 U.S. at 540. Lastly, some of the most damaging evidence against Mohamed, such as evidence of Mohamed and Hussein's attempt to board a flight to Egypt and their pre-arrest conversations, relates to Mohamed and Hussein alike.

### C. Right to Call Codefendant as Witness

In his Supplemental Memorandum, Hussein argues that Mohamed's favorable statements about Hussein must be heard by the jury to ensure Hussein receives a fair trial. (Doc. 389.) Hussein suggests that, absent severance, he will be deprived of his right to call Mohamed as a witness. (*Id.*; *see also* Doc. 205 at 5-6.) Although a defendant's right to put on witnesses has "long been recognized as essential to due process," *Denham v. Deeds,* 954 F.2d 1501, 1503 (9th Cir. 1992) (cleaned up), when an asserted reason for severance is the need for a co-defendant's testimony, the movant-defendant must show that he would call the codefendant at a severed trial, the codefendant would in fact testify, and the testimony would be favorable to the moving party. *United States v. Jenkins*, 785 F.3d 1387, 1393-94 (9th Cir. 1986). Only "substantially exculpatory" testimony is sufficient to compel a severance, not merely testimony that contradicts the government's proof. *United States v. Mariscal,* 939 F.2d 884, 885-86 (9th Cir. 1991).

Hussein has not shown Mohamed would testify, that his testimony would be favorable to Hussein, or that Hussein would call Mohamed. Therefore, severance on this

basis is unwarranted.

### C. Mutually Antagonistic Defenses

In his Notice of Joinder (Doc. 205), Mohamed argues severance is appropriate and necessary because of the antagonistic nature of Hussein's defense, which will place the blame for his conduct squarely on Mohamed.

Rule 14 does not require severance as a matter of law when codefendants present "mutually exclusive defenses." *Zafiro*, 506 U.S. at 538. "Antagonism between defenses is not enough [for severance], even if defendants seek to blame one another. Rather, it must be shown, on the facts of the individual case, that the defenses are antagonistic to the point of being mutually exclusive." *United States v. Ramirez*, 710 F.2d 535, 546 (9th Cir. 1983) (cleaned up). In other words, "the acceptance of one party's defense precludes the acquittal of the other defendant." *Zafiro*, 506 U.S. at 537.

Defendants' defenses are not mutually exclusive. Mohammed provided notice that "he may rely on the defense of [government] entrapment at trial." (Doc. 212.) Hussein did not submit a notice of defenses. Regardless, the Government has never alleged that only one of the Defendants was culpable for conspiring to provide material support or that only one Defendant was attempting to travel overseas to provide material support. The government has detailed the evidence it intends to introduce to show that each Defendant independently expressed their intent to provide support to ISIS and took steps to do so. In other words, this is not the type of case where the jury must "choose" between the Defendants, and proper jury instructions can direct the jurors to separately consider each charge and each Defendant.

### CONCLUSION

Defendants were properly joined under Rule 8(b) and Defendants have not met their heavy burden of showing that severance is warranted. Defendants have not shown that they would be substantially prejudiced by a joint trial to a degree that would essentially deprive them of a fair trial or that a joint trial would compromise a specific trial right or prevent the jury from making a reliable judgment about their guilt or innocence. With appropriate jury instructions, the jurors can reasonably be expected to collate and appraise the

individual evidence against each Defendant. The issues presented are within the ordinary competence of the jurors. Accordingly,

**IT IS ORDERED** Defendant Hussein's Motion to Sever (Doc. 201) is **denied**.

Dated this 18th day of March, 2024.

Jennifer G. Zipps
United States District Judge