GARY M. RESTAINO
United States Attorney
District of Arizona
M. BRIDGET MINDER
Arizona State Bar No. 023356
CHRISTOPHER A. BROWN
LIZA M. GRANOFF
Assistant U.S. Attorneys
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: Bridget.Minder@usdoj.gov
Email: Christopher.Brown7@usdoj.gov
Email: Liza.Granoff@usdoj.gov

MATTHEW G. OLSEN
Assistant Attorney General
U.S. Department of Justice
National Security Division
JOHN CELLA
Trial Attorney
Counterterrorism Section
950 Pennsylvania Ave, NW
Washington, DC 20530
Telephone: 202-305-1601
Email: John.Cella@usdoj.gov
Attorneys for Plaintiff

FILED ___ LODGED
RECEIVED ___ COPY

AUG - 1 2024

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-19-02162-001-TUC-JGZ |
| Plaintiff, | |
| vs. | PLEA AGREEMENT |
| 1. Ahmed Mahad Mohamed, | |
| Defendant. | |

The United States of America and defendant Ahmed Mahad Mohamed agree to the following disposition of this matter:

PLEA

1.    Defendant agrees to plead guilty to Count One of the Superseding Indictment, which charges defendant with a Class C felony violation of 18 U.S.C. § 2339B,

Conspiracy to Provide Material Support and Resources to a Designated Foreign Terrorist Organization. Defendant also agrees to the Forfeiture Allegation in the Superseding Indictment. The government will dismiss the remaining count of the Superseding Indictment against defendant at the time of sentencing.

Elements of the Offense

2. The elements of the offense are as follows:

a. Defendant knowingly conspired and agreed with at least one other person to provide material support or resources to a designated foreign terrorist organization, and

b. Defendant knew the organization described in the indictment (i) was a designated terrorist organization, (ii) engaged or engages in terrorist activity, or (iii) engaged or engages in terrorism.

The term "material support or resources" means any property, tangible or intangible, or service, including personnel (one or more individuals who may be or include oneself).

Maximum Penalties

3. Defendant understands the maximum penalties for the offense to which he is pleading are a term of 20 years' imprisonment, a fine of $250,000, or both, and a lifetime term of supervised release.

4. Defendant agrees to pay a fine unless he establishes the applicability of the exceptions contained in § 5E1.2(e) of the Sentencing Guidelines.

5. Pursuant to 18 U.S.C. § 3013, defendant shall pay a special assessment of $100. The special assessment is due and payable at the time defendant enters the plea of guilty, but in no event shall be paid later than the time of sentencing unless defendant is indigent. If defendant is indigent, the special assessment will be collected according to the provisions of Chapters 227 and 229 of Title 18, United States Code.

Immigration Consequences

6. Defendant recognizes that pleading guilty, as set forth in more detail below, may have consequences with respect to his immigration status if defendant is a recently

naturalized United States citizen or is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which defendant is pleading guilty. Although there may be exceptions, defendant understands that his guilty plea and conviction for this offense make it practically inevitable and a virtual certainty that he will be removed or deported from the United States. Defendant agrees that he has discussed this eventuality with his attorney. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that this plea entails, even if the consequence is defendant's automatic removal from the United States.

## STIPULATIONS, TERMS AND AGREEMENTS

### Agreements Regarding Sentencing

7. Stipulations: Sentencing: Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties agree that:

   a. Any prison sentence shall not exceed 192 months.

   b. The enhancements in U.S.S.G. § 2M5.3(b) and § 3A1.4(a)-(b) apply in this case.

   c. Defendant will not seek any adjustments in Chapters Two, Three or Four of the Sentencing Guidelines or any "departures" from the Sentencing Guidelines.

   d. Nothing in this agreement precludes the defendant from asking for a variance from the final advisory Sentencing Guidelines Range.

8. Stipulation: Agreement Contingent on Plea by Co-Defendant: Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties agree that this plea agreement is contingent on a guilty plea being entered by co-defendant, Abdi Yemani Hussein, and Hussein's guilty plea being accepted by the Court. Defendant understands that if Hussein does not accept his plea agreement for any reason or does not enter a guilty plea, the United States may, but is not required to, withdraw from this plea agreement with defendant, in which case the parties would not be bound by the terms of this plea agreement, including the stipulations, recommendations, or other agreements herein, or any of the facts contained in the factual

basis. If Hussein withdraws his guilty plea, or if the Court rejects Hussein's guilty plea, the United States may, but is not required to, withdraw from this plea agreement with defendant. Only the United States, not defendant, may elect to withdraw from this plea agreement.

9. Recommendation: Acceptance of Responsibility. Pursuant to Fed. R. Crim. P. 11(c)(1)(B), if defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding defendant's commission of the offense, and if defendant demonstrates an acceptance of responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(a). If defendant has an offense level of 16 or more, the United States will move the Court for an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

10. Defendant understands that if he violates any of the conditions of his supervised release, the supervised release may be revoked. Upon such revocation, notwithstanding any other provision of this agreement, defendant may be required to serve a term of imprisonment or defendant's sentence may otherwise be altered.

11. Defendant and the government agree that this agreement does not in any manner restrict the actions of the government in any other district or bind any other United States Attorney's Office.

12. Defendant understands and agrees to cooperate fully with the United States Probation Office in providing (a) all criminal history information, i.e., all criminal convictions as defined under the Sentencing Guidelines; (b) all financial information, i.e., present financial assets or liabilities that relate to the ability of defendant to pay a fine or restitution; (c) all history of drug abuse which would warrant a treatment condition as part of sentencing; and (d) all history of mental illness or conditions which would warrant a treatment condition as part of sentencing.

- 4 -

13.    If the Court, after reviewing this plea agreement, concludes any provision is inappropriate, it may reject the plea agreement pursuant to Fed. R. Crim. P. 11(c)(5), giving defendant, in accordance with Fed. R. Crim. P. 11(d)(2)(A), an opportunity to withdraw his guilty plea.

Forfeiture

14.    Nothing in this agreement shall be construed to protect defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all monetary penalties shall be due immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce the judgment.

15.    Defendant agrees to forfeit, and hereby forfeits, all interest in any asset that defendant owns or over which defendant exercises control, directly or indirectly, as well as any property that is traceable to, derived from, fungible with, or a substitute for property that constitutes the proceeds of the offense(s), or which was used to facilitate the commission of the offense(s), including the following property: **U.S. currency (cash) in the amount of $10,002**.

16.    Defendant further agrees to waive all interest in any such asset in any administrative or judicial forfeiture proceeding, whether criminal or civil, state, or federal. Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant further understands and agrees that forfeiture of the assets is appropriate and in accordance with the applicable

forfeiture statutes, which may include Title 8 U.S.C. § 1324(b), Title 18 U.S.C. §§ 924(d), 981, 982 and 2253, Title 21 U.S.C. §§ 853 and 881, and Title 28 U.S.C. § 2461(c).

17. Forfeiture of defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this court may impose upon defendant in addition to forfeiture. This agreement does not preclude the United States from instituting any civil or administrative forfeiture proceedings as may be appropriate now or in the future.

18. Defendant agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, double jeopardy, or any other means) to any forfeiture imposed as a result of this guilty plea or any pending or completed administrative or civil forfeiture actions, including that the forfeiture constitutes an excessive fine or punishment. Defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding. Defendant acknowledges that all property covered by this agreement is subject to forfeiture as proceeds of illegal conduct, property facilitating illegal conduct, and substitute assets for property otherwise subject to forfeiture, and that no other person or entity has a legitimate claim to these items listed.

19. Defendant agrees not to file a claim to any of the listed property in any civil proceeding, administrative or judicial, which may be initiated. Defendant further agrees that he/she will not contest civil, administrative, or judicial forfeiture of the listed property. Defendant agrees to waive his right to notice of any forfeiture proceeding involving this property and agrees not to file a claim or assist others in filing a claim in that forfeiture proceeding.

20. The government reserves its right to proceed against any remaining assets not identified either in this agreement or in any civil actions which are being resolved along with this plea of guilty, including any property in which defendant has any interest or control, if said assets, real or personal, tangible or intangible were involved in the offense(s).

- 6 -

21.    Defendant hereby waives and agrees to hold the government and its agents and employees harmless from any and all claims whatsoever in connection with the seizure, forfeiture, and disposal of the property described above.  Without limitation, defendant understands and agrees that by virtue of this plea of guilty, defendant will waive any rights or cause of action that defendant might otherwise have had to claim that he/she is a "substantially prevailing party" for the purpose of recovery of attorney fees and other litigation costs in any related civil forfeiture proceeding pursuant to 28 U.S.C. § 2465(b)(1).

<u>Stipulation to Judicial Removal Order</u>

22.    Defendant agrees to the entry of a stipulated judicial order of removal pursuant to 8 U.S.C. §§ 1228(c)(5) and 1227.  Specifically, defendant admits he is a native and citizen of Somalia and is removable from the United States pursuant to 8 U.S.C. § 1227(a)(4)(B) (engaged in terrorist activity).

*Voluntary Waiver of Rights*

23.    After consultation with counsel and understanding the legal consequences of doing so, defendant knowingly and voluntarily waives the right to the notice and hearing provided for in 8 U.S.C. § 1228(c)(2) and further waives any and all rights to appeal, reopen, reconsider, or otherwise challenge this stipulated removal order.  Defendant understands and knowingly waives his right to a hearing before an immigration judge or any other authority under the Immigration and Nationality Act ("INA"), on the question of defendant's removability from the United States.  Defendant further understands the rights defendant would possess in a contested administrative proceeding and waives these rights, including defendant's right to examine the evidence against him, to present evidence on his behalf, and to cross-examine the witnesses presented by the government.

24.    Defendant agrees to waive his rights to any and all forms of relief or protection from removal, deportation, or exclusion under the INA, as amended, and related federal regulations.  These rights include, but are not limited to, the ability to apply for the following forms of relief or protection from removal: asylum; withholding of removal under 8 U.S.C. § 1231(b)(3); any protection from removal pursuant to Article 3 of the

United Nations Convention Against Torture, including withholding or deferral of removal under 8 C.F.R. § 208; cancellation of removal; adjustment of status; registry; de novo review of a denial or revocation of temporary protected status (current or future); waivers under 8 U.S.C. §§ 1182(h) or 1182(i); visa petitions; consular processing; voluntary departure or any other possible relief or protection from removal available under the Constitution, laws or treaty obligations of the United States. As part of this agreement, defendant specifically acknowledges and states that defendant has not been persecuted, and has no present fear of persecution, in Somalia on account of his race, religion, nationality, membership in a particular social group, or political opinion. Similarly, defendant further acknowledges and states that defendant has not been tortured, and has no present fear of torture, in Somalia.

25.    Defendant hereby requests that an order be issued by this Court for his removal to Somalia. Defendant agrees to accept a written order of removal as a final disposition of his immigration proceedings and waives any and all rights to challenge any provision of this agreement in any United States or foreign court or tribunal.

26.    Defendant hereby agrees to make the judicial order of removal a public document, waiving his privacy rights, including his privacy rights under 8 C.F.R. § 208.6. At the request of the U.S. Attorney's Office, U.S. Immigration and Customs Enforcement ("ICE") concurs with the government's request for a judicial order of removal. As a result of the above-referenced order, upon the completion of defendant's criminal proceedings, including any sentence of incarceration, defendant shall be removed to Somalia.

27.    It is the intention of the parties that at the conclusion of his sentence of incarceration in this case, defendant will be removed from the United States. Defendant understands and agrees that at the end of his sentence of incarceration in this case, he will be transferred to ICE custody pending his removal from the United States. Defendant agrees that he will not seek to be released from ICE custody prior to his removal from the United States.

*Assistance in the Execution of Removal*

28.    Defendant agrees to assist ICE in the execution of his removal.  Specifically, defendant agrees to assist ICE in the procurement of any travel or other documents necessary for defendant's removal; to meet with and to cooperate with representatives of the country or countries to which defendant's removal is directed; and, to execute those forms, applications, or waivers needed to execute or expedite defendant's removal.  Defendant further understands that his failure or refusal to assist ICE in the execution of his removal shall breach this plea agreement and may subject defendant to criminal penalties under 8 U.S.C. § 1253.

*Re-entry and Penalties*

29.    Defendant concedes that the entry of this judicial order of removal renders him permanently inadmissible to the United States.  He agrees that he will not enter, attempt to enter, or transit through the United States without first seeking and obtaining permission to do so from the Secretary of the Department of Homeland Security or other designated representative of the U.S. government.

30.    The Court's failure, for any reason, to enter the judicial order of removal, shall make this plea agreement, and the promises contained herein, null and void.

Waiver of Defenses and Appeal Rights

31.    Provided defendant receives a sentence in accordance with this plea agreement, defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against defendant, or any aspect of defendant's sentencing-including the manner in which the sentence is determined, the determination whether defendant qualifies for "safety valve" (U.S.S.G. § 5C1.2 and 18 U.S.C. § 3553(f)), and any sentencing guideline determinations.  The sentence is in accordance with this agreement if the sentence imposed does not exceed 192 months imprisonment.  Defendant further waives: (1) any right to appeal the Court's

entry of judgment against defendant; (2) any right to appeal the imposition of sentence upon defendant under 18 U.S.C. § 3742 (sentence appeals); (3) any right to appeal the district court's refusal to grant a requested variance; (4) any right to collaterally attack defendant's conviction and sentence under 28 U.S.C. § 2255, or any other collateral attack; and (5) any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c) (except for the right to file a compassionate release motion under 18 U.S.C. § 3582(c)(1)(A) and to appeal the denial of such a motion). Defendant acknowledges that this waiver shall result in the dismissal of any appeal or collateral attack defendant might file challenging his conviction or sentence in this case. If defendant files a notice of appeal or a habeas petition, notwithstanding this agreement, defendant agrees that this case shall, upon motion of the government, be remanded to the district court to determine whether defendant is in breach of this agreement and, if so, to permit the government to withdraw from the plea agreement. This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

Reinstitution of Prosecution

32.    Nothing in this agreement shall be construed to protect defendant in any way from prosecution for perjury, false declaration or false statement, or any other offense committed by defendant after the date of this agreement. In addition, if defendant commits any criminal offense between the date of this agreement and the date of sentencing, the government will have the right to withdraw from this agreement. Any information, statements, documents, and evidence which defendant provides to the United States pursuant to this agreement may be used against defendant in all such proceedings.

33.    If defendant's guilty plea is rejected, withdrawn, vacated, or reversed by any court in a later proceeding, the government will be free to prosecute defendant for all charges as to which it has knowledge, and any charges that were dismissed because of this plea agreement will be automatically reinstated. In such event, defendant waives any objections, motions, or defenses based upon the Speedy Trial Act or the Sixth Amendment

to the Constitution as to the delay occasioned by the later proceedings. Defendant agrees that the stipulated sentencing ranges set forth under "Agreements Regarding Sentence" will not be offered if prosecution is re-instituted.

### WAIVER OF DEFENDANT'S RIGHTS AND FACTUAL BASIS

#### Waiver of Rights

I have read each of the provisions of the entire plea agreement with the assistance of counsel and a Somali interpreter, and I understand its provisions. I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I will be giving up my right to plead not guilty; to trial by jury; to confront, cross-examine, and compel the attendance of witnesses; to present evidence in my defense; to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination; all with the assistance of counsel; to be presumed innocent until proven guilty beyond a reasonable doubt; and to appeal.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charge to which I am entering my guilty plea. I have been advised by my attorneys of the nature and range of the possible sentence, and that I will not be able to withdraw my guilty plea if I am dissatisfied with the sentence the court imposes.

My guilty plea is not the result of force, threats, assurances or promises other than the promises contained in this agreement. I agree to the provisions of this agreement as a voluntary act on my part, rather than at the direction of or because of the recommendation of any other person, and I agree to be bound according to its provisions. I agree that any Sentencing Guidelines range referred to herein or discussed with my attorneys is not binding on the Court and is merely an estimate.

I agree that this written plea agreement contains all the terms and conditions of my plea and that promises made by anyone (including my attorneys) that are not contained within this written plea agreement are without force and effect and are null and void.

- 11 -

I am satisfied that my defense attorneys have represented me in a competent manner.

I am not now on or under the influence of any drug, medication, liquor, or other intoxicant or depressant, which would impair my ability to fully understand the terms and conditions of this plea agreement.

<u>Factual Basis and Relevant Conduct</u>

I further agree that the following facts accurately describe my conduct in connection with the offense to which I am pleading guilty and that if this matter were to proceed to trial the government could prove the elements of the offense beyond a reasonable doubt:

Starting in late 2018 or early 2019, and continuing until July 26, 2019, while I was living in Tucson, Arizona, I conspired and agreed with Abdi Yemani Hussein ("Hussein") to provide material support (specifically, ourselves) to the Islamic State of Iraq and al-Sham ("ISIS"), which was at the time, and still is, a designated Foreign Terrorist Organization ("FTO") pursuant to Section 219 of the INA, knowing that ISIS was a designated FTO, and knowing that ISIS had engaged in, and was engaging in, terrorist activity and terrorism.[1]

By at least August 2018, I was seeking out other ISIS supporters and communicating with them online about making hijrah (*migration, also spelled hijra*) to join ISIS. I used search phrases like "kill the kuffar" to find other ISIS supporters. I told them I was an "islamic state supporter and soon want to make hijrah with 3 brothers in usa." I also said, "if i come to Syria i want to be the beheading guy i will kill ever[y] kafir (*kuffar*) and murtad," "when I get in Syria i want to get shahada quickly," and "i want to die in sham syria thats my dream."

---

[1] On or about October 15, 2004, the U.S. Secretary of State designated al Qaeda in Iraq ("AQI"), then known as Jam'at al Tawhid wa'al-Jihad, as an FTO under Section 219 of the INA and as a Specially Designated Global Terrorist under section 1(b) of Executive Order 13224. On or about May 15, 2014, the Secretary of State amended the designation of AQI as an FTO under Section 219 of the INA and as a Specially Designated Global Terrorist entity under section 1(b) of Executive Order 13224 to add the alias Islamic State of Iraq and the Levant ("ISIL") as its primary name. The Secretary also added the following aliases to the FTO listing: the Islamic State of Iraq and al-Sham (i.e., "ISIS"), the Islamic State of Iraq and Syria, ad-Dawla al-Islamiyya fi al-'Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, and Al-Furqan Establishment for Media Production. On September 21, 2015, the Secretary added the following aliases to the FTO listing: Islamic State, ISIL, and ISIS. To date, ISIS remains a designated FTO.

- 12 -

In December 2018, I started communicating online with a person I believed to be a fellow ISIS supporter who, like me, wanted to make hijrah to the Middle East to join ISIS. I did not know this person was an undercover employee ("UCE") of the FBI. During our first exchange, I told him "if I go to Syria I want to be the behading [sic] person wallahi this kuffar I want to kill them so many I am thirsty [for] their blood," "[t]he only dream I have is to be mujahid fight in the way of Allah," and "I just want to go to Syria and join the Islamic state and fight jihad."

I continued communicating online with the UCE about making hijrah. My first in-person meeting with the UCE was on February 1, 2019, in Tucson. I met with the UCE again in Tucson on March 12, 2019. Hussein came with me; by this time, Hussein wanted to make hijrah with me. I said to Hussein and the UCE "the only future I have is jihad" and "my goal is to make hijra and fight." We also talked about what we might do if we could not travel outside the United States. I said, "I wish right now I can make another 9/11 man," "I will take the airplane," "And go to the building, boom, to get shahadah, that's all."

On June 24, 2019, Hussein and I met the UCE in Tucson again. (I also met the UCE, without Hussein, on April 22, 2019.) On June 24, I told the UCE that Hussein and I were "serious" and "ready" to make hijrah. I said, "If you said, 'let's go tomorrow,' I'm ready" and "Without jihad, there is no life." We also talked again about what we might do if we couldn't leave the United States. I said I would conduct an attack with a truck in New York: "If they stop us, me and this brother [Hussein], wallahi we going to go to New York, we going to … take some truck…. In there so many people, for me that's my idea, man." I also said, "I will make, you know, another 9-11, even if I can." Hussein said he wanted to blow up the White House.

After our meeting on June 24, 2019, Hussein and I began preparing to travel to Egypt so we could join ISIS. To raise money for our trip, I sold my car for $4,500. Hussein sold his car, too. On July 25, 2019, Hussein and I bought roundtrip plane tickets from Tucson, Arizona, to Cairo, Egypt. We planned to depart the next day, July 26, 2019; the return date for our tickets was November 30, 2019, but we did not intend to return.

On the morning of July 26, 2019, Hussein and I rode with the UCE to the airport. Hussein and I had $10,002 in cash, which I was carrying. We planned to use the money for food, hotel, and other travel expenses, and to buy guns if needed. During the car ride to the airport, Hussein asked: "So like where are we gonna buy the guns? You know? I wanna, like buy, like

a lot ….” I said: "so if the brothers can buy for us guns, all that, we will get out there as soon as possible."

When we got to the Tucson airport on July 26, 2019, Hussein and I checked in for our flight at the ticket counter, went through the passenger security screening, and walked to the departure gate for our flight. I intended to board the flight and travel from Tucson to Cairo, Egypt. In Egypt, I planned to work with Hussein and other ISIS supporters to smuggle ourselves into the ISIS-controlled area of the Sinai Peninsula and work under the direction and control of ISIS. While working for ISIS, I intended to spread and advance ISIS's ideology and thereby influence or affect the conduct of the United States government and foreign governments by intimidation and coercion, as well as to retaliate against those governments for their opposition to ISIS.

8/1/2024
Date



AHMED MAHAD MOHAMED
Defendant

## DEFENSE ATTORNEY'S APPROVAL

I have discussed this case and the plea agreement with my client in detail and have advised defendant of all matters within the scope of Rule 11, Fed. R. Crim. P., the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea, including defendant's waiver the right to appeal. No assurances, promises, or representations have been given to me or to defendant by the government or by any of its representatives which are not contained in this written agreement. I concur in the entry of the plea as indicated above and on the terms and conditions set forth in this agreement as in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Rule 11, Fed. R. Crim. P.

8/1/2024
Date

ADAM N. BLEIER
COREY A. R. SIMON
Attorneys for Defendant

- 14 -

## GOVERNMENT'S APPROVAL

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth are appropriate and are in the best interests of justice.

GARY M. RESTAINO
United States Attorney
District of Arizona

08|01|2024
Date

M. BRIDGET MINDER
CHRISTOPHER A. BROWN
LIZA M. GRANOFF
Assistant U.S. Attorneys

- 15 -